# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

C.N. ESTRELLA, Plaintiff, v. J.S. WOODFORD, et. al., Defendants.

1:05-cv-01321-OWW-SMS (PC)

ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND

(Doc. 15)

## I. SCREENING ORDER

C.N. Estrella ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis. Plaintiff filed his original complaint on October 20, 2005, which the Court dismissed with leave to amend on December 18, 2006. (Docs. 1 & 13.) Plaintiff filed his first amended complaint on January 12, 2007 – which is presently before the Court for screening.

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been

paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

**B. Summary of Plaintiff's Complaint**

Plaintiff is a state prisoner at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran – where the acts he complains of occurred.

Plaintiff names defendants: J.S. Woodford, CDC Director; S.G. Adams, Warden at SATF; Dr. D. Smith; Dr. Bhatt; Dr. Hicks; Benjie, R.N.; Doe 1, employee of Corcoran District Hospital ("CDH"); and Doe 2, cook at SATF.

Plaintiff alleges that on May 7, 2004, he slipped while performing the duties of his job assignment; he had previously requested, but was denied, rubber boots to avert a fall; Plaintiff was assisted to his feet and continued to work, albeit with a limp. Subsequently, Plaintiff's knee remained painful and, on a daily basis, "popped out," causing him to fall while working and be taken to see Benjie, R.N., or an M.T.A. On May 20, 2004, due to Plaintiff having filed a 602 appeal and for workers' compensation, Plaintiff was re-classified and stripped of his work privileges. On December 14, 2004, Plaintiff was admitted to CDH for knee surgery by Dr. Smith; prior to the surgery, Dr. Hicks was unsuccessful in the first two shots to Plaintiff's lower spine but succeeded with the third. While still partially awake, Plaintiff heard Dr. Hicks tell Dr. Smith that he thought he hit a nerve; subsequent to the surgery, Plaintiff's hospital stay was

extended by 1 ½ days due to pain and numbness in Plaintiff's lower extremity. Despite Plaintiff's requests to stay longer, Dr. Smith and Dr. Hicks discharged him to SATF; when back at SATF, Plaintiff was not seen by medical staff for fourteen days – during which time he suffered pain, a bloody bandage, and difficulty ambulating that interfered with his ability to obtain meals as he was not given a wheelchair or an order to "lay in." Plaintiff saw Dr. Bhatt approximately fourteen days after his return to SATF; Dr. Bhatt issued Plaintiff a wheelchair, yet due to "said doctor's" inexperience and lack of expertise Plaintiff is still not able to walk unassisted 100 feet.

Plaintiff seeks declaratory and injunctive relief, and monetary damages.

It should be noted that Plaintiff's complaint merely states a semi-chronological rendition of events, without specifying which of his constitutional rights he believes were violated by any given defendant's acts. The Court provides Plaintiff with the following law that might apply to his generalized claims. However, it is Plaintiff's duty to specify his claims for relief against each defendant and their factual basis. The Court will not guess as to which facts Plaintiff believes support his unspecified constitutional violation(s). Plaintiff will be given one last chance to file an amended complaint to cure the defects identified in this order.

**C. Pleading Requirements**

**1. *Federal Rule of Civil Procedure 8(a)***

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and

unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

**2. *Federal Rule of Civil Procedure 18(a)***

"The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is advised that if he chooses to file an amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

**3. *Linkage Requirement***

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

> Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff names J.S. Woodford, CDC Director; S. G. Adams, Warden at SATF; Doe 2, cook at SATF; and Doe 1, employee of Corcoran District Hospital ("CDH") as defendants in this action, but fails to link them to any factual allegations. Thus, these defendants are appropriately dismissed at this time. Rather than just stating a chronological rendition of events, Plaintiff must clarify which defendant(s) he feels are responsible for any given violation(s) of his constitutional rights. Plaintiff is further advised that titles such as "staff," "said doctors," and the like, generally fail to link any specific defendant to offending acts.

**D. Claims for Relief**

**1. *Failure to Protect/Safety***

Plaintiff alleges that, prior to his fall, he asked his "supervisor (      )" for a pair of special rubber work boots to prevent from slipping or falling, but that he was "shrugged off." (Doc. 15, pg. 3.)

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Helling v. McKinney, 509 U.S. 25, 31 (1993)). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hoptowit v. Ray, 682 F.2d

1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer v. Brennan, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health ... .'" Farmer v. Brennan, 511 U.S. 825, 843 (1994) (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37, 114 S.Ct. 1970.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

Thus, in order to state a cognizable claim against prison officials for failure to provide for a prisoner's safety/protection, a prisoner must allege (and eventually prove): (1) a sufficiently serious risk of harm (either current or future); (2) that was caused by the defendant(s); and (3) that the defendant(s) knew that his/her action(s) exposed the prisoner to that serious risk of harm.

While Plaintiff alleges that his supervisor "shrugged off" a request for rubber boots to avoid slipping, Plaintiff's claim is not cognizable as he fails: (1) to state both what condition(s) existed that caused him to fear slipping and whether his supervisor was aware of the condition(s) and (2) to link the "supervisor ( )" nomenclature to any of the named or otherwise identified defendants in this action. Plaintiff is advised that, if he chooses to file a second amended complaint, he must provide either the name of his supervisor to whom his request was made, or as much detail as possible to enable the Court to identify that person for service of process (in the event Plaintiff is able to state a cognizable claim).

**2. *Deliberate Indifference to Serious Medical Needs***

It appears that Plaintiff is attempting to allege that various of the named medical defendants were deliberately indifferent to his serious medical needs.

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106. Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (*quoting* Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994).

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (*citing* Estelle, 429 U.S. at 105-06). See also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (*quoting* Whitley, 475 U.S. at 319). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must

not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (*per curiam*); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*). Mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).

Plaintiff alleges that Benjie, RN and MTA's gave him an ice pack and sent him back to work each time his knee popped out subsequent to his fall, prior to surgery. Dr. Smith performed knee surgery in December of 2004, and he discharged Plaintiff to CDC despite Plaintiff's request to stay longer. Dr. Hicks missed with his first two spinal injections, but hit with the third, "may have hit a nerve," and, along with Dr. Smith, discharged Plaintiff to CDC despite Plaintiff's request to stay longer. Plaintiff's hospital stay was extended 1 ½ days longer than intended due to pain and numbness. Subsequent to surgical discharge, he was not seen by medical providers at CDC for fourteen days and was made to suffer pain, a bloody bandage, and difficulty ambulating unassisted. After fourteen days, Dr. Bhatt saw Plaintiff and ordered a wheelchair; yet, due to "said doctor's" lack of experience and expertise, Plaintiff is still not able to walk 100 feet without assistance.

While Plaintiff's knee qualifies as a serious medical need and certainly none of the care he received would qualify as optimal, Plaintiff fails to show that any prison staff were deliberately indifferent to Plaintiff's condition. Plaintiff's allegations might show indifference, negligence, or medical malpractice, and here fail to state a cognizable claim for deliberate indifference to his serious medical needs. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (*citing* Estelle, 429 U.S. at 105-06). See also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004).

**3. *Retaliation***

Plaintiff alleges that his work privileges were revoked because he filed a 602 inmate appeal and for worker's compensation. (Doc. 15, pg. 4.)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Both litigation in court and filing inmate grievances are protected activities and it is

impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff alleges that he was " 'medically unassigned' technically fired" because he filed a 602 appeal and for workers' compensation. (Doc. 15, pg. 4.) However, Plaintiff does not indicate which defendant is responsible for the retaliatory loss of his job. Plaintiff also did not make any allegations as to whether any of the acts complained of reasonably advanced a legitimate correctional goal. Any retaliation claim by Plaintiff is incognizable until he addresses which defendant(s) engaged in the allegedly retaliatory acts and whether any of the retaliatory acts reasonably advanced a legitimate correctional goal.

**4. *Inmate Appeals***

It appears that Plaintiff may be attempting to state a claim regarding the handling of 602 inmate appeals.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-

84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Plaintiff mentions that, in December of 2004, he was "finally" able to obtain knee surgery. Assuming that Plaintiff filed 602 appeals to obtain knee surgery, defendants' actions in responding to Plaintiff's appeal, cannot give rise to any claims for relief under section 1983, unless he is able to show deliberate indifference to his serious medical need by the person processing his appeal for medical surgery, and that any such delay led to further injury. (See I., D., 2. herein above.) Accordingly, Plaintiff fails to state any claims upon which relief may be granted under section 1983.

**5. *Supervisory Liability***

Plaintiff names supervisorial personnel CDC Director J.S. Woodford and SATF Warden S.G. Adams as defendants in this action.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

As discussed herein, Plaintiff fails to state a cognizable claim for violation of his constitutional rights. Since Plaintiff fails to state a cognizable claim for violation of his constitutional rights, unable to allege that any of the defendants personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646. Thus, at this time, Plaintiff's claims against CDC Director J.S. Woodford and SATF Warden S.G. Adams are subject to dismissal.

**6. *Loss of Plaintiff's Work Assignment***

Plaintiff does not have a liberty interest in his prison job,[1] Sandin v. Connor, 515 U.S. 472, 484 (1995), and Plaintiff does not have a property interest in his job. See Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1995). Because Plaintiff has neither a liberty interest nor a property interest in his prison job, Plaintiff

[1] In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. Id. at 481-84. Instead, the Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. Id. In doing so, the Court held that liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

was not entitled to any procedural due process protections in conjunction with his removal. Further, plaintiff has alleged no facts that suggest that he was removed on a basis that infringed upon any constitutionally protected interests. Vignolo, 120 F.3d at 1077. Accordingly, Plaintiff's allegations fail to give rise to a cognizable claim for relief under section 1983 for violation of the Due Process Clause.

**7. *State Law Claims***

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Because Plaintiff may be able to state a claims for relief under section 1983, the Court reserves discretion to exercise supplemental jurisdiction over and to address Plaintiff's state law claims after Plaintiff files his amended complaint so as to allow Plaintiff opportunity to state cognizable claims for relief under section 1983.

## II. CONCLUSION

For the reasons set forth above, Plaintiff's first amended complaint is dismissed, with leave to file a second amended complaint within thirty days. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his second amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v.

Cassidy, 625 F.2d 227 (9th Cir. 1980). The second amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's second amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

Plaintiff is further advised that a second amended complaint supercedes all prior complaints in an action, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that all causes of action alleged in any previous complaints, which are not alleged in a subsequent amended complaint, are waived. King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

The Court provides Plaintiff with one final opportunity to amend to cure the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court in this order; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim.

IT IS SO ORDERED.

**Dated: October 2, 2008** **/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE